IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

BENJAMIN EUGENE GREEN, JR.,

    Movant,

v.                                   Case No. 2:14-cv-17494
                                           Criminal Case No. 2:99-cr-00057-01

UNITED STATES OF AMERICA,

    Respondent.

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Pending before the Court are Movant Benjamin Eugene Green, Jr.'s ("Green") *pro se* Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255, (ECF No. 73) and Letter-Form Motion to be Heard. (ECF No. 85).[1] This matter is assigned to the Honorable Thomas E. Johnston, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having thoroughly considered the record, the undersigned **FINDS** that Green clearly is not entitled to relief under § 2255 and respectfully **RECOMMENDS** that his Motion to be Heard be **DENIED**; his § 2255 Motion be **DENIED;** and this matter be **DISMISSED** and removed from the docket of the Court.

---

[1] The docket entries referenced throughout this PF & R are taken from proceedings of record in Green's criminal case and cite to Case No. 2:99-cr-00057-01.

1

I.  **Relevant History**

In September 1999, Green was sentenced on a federal drug trafficking conviction to a term of imprisonment to be followed by a term of supervised release. (ECF No. 18). In October 2009, Green was released from prison and began serving the thirty-six month term of supervised release. (ECF No. 33 at 1). On February 19, 2013, Green's probation officer filed a petition seeking to revoke Green's supervised release. (*Id.*). The petition set out alleged violations of four standard conditions, including the condition that the defendant shall not commit any crimes. According to the petition, Green had been arrested, charged, and convicted of possession of marijuana in the Kanawha County Magistrate Court. (*Id.* at 1-2). In addition, Green had allegedly left the judicial district without permission and had used marijuana. (*Id.* at 2). Green was arrested on the petition, appeared at an initial proceeding, and was released on bond subject to terms and conditions, including that he not use or unlawfully possess any controlled substance not prescribed to him by a licensed medical practitioner. (ECF No. 54).

On March 25, 2013, Green appeared before the District Court for a revocation hearing. (ECF No. 67). Green admitted all of the violations, but both he and his attorney argued strenuously and effectively against incarceration. (*Id.* at 11-31). Although Green faced up to five years in prison on the supervised release violations, the presiding District Judge agreed to hold the matter in abeyance. However, the District Judge gave Green an unequivocal warning, stating as follows:

> So this is what I think I'm going to do. I'm going to take your counsel's suggestion and continue this matter generally and hold this petition in abeyance, which means I'm going to hold it over your head and, if you have – you've got another, what, twenty months or so on paper, something like that? It was three years in October. Now it's about three and a half. So about another eighteen months.

> I'm just going to continue this generally, but I'm going to give you a little warning that Mr. Lancaster has heard before and that is that in my court, typically on the first petition, I will be relatively lenient, and that sometimes takes the form of drug treatment; sometimes takes the form of a brief sentence; sometimes it's something like what we're going to do today, but if there's another petition, if you violate the terms of your supervised release again and the probation officer files another petition and we're back here again and, at that point, I don't really care how serious the violation is because you've been warned, I still can give you up to five years in prison, which is more than I have for most defendants that come before me. So that is a serious, serious penalty that you face if you're back in front of me on another revocation petition.
>
> ....
>
> Why you would drive to Columbus and pick up a bunch of marijuana is beyond me. It makes no sense and it concerns me a little bit that you could get yourself into trouble again and that's why I'm giving you this warning, that if you're back before me, you're going to face a very serious sentence.
>
> So I give you that warning as -- as both a warning and an incentive to stay on the straight and narrow, focus on your education, focus on your employment, and your family, and these positive things in your life, and stay away from this other stuff that will do you no good. So I'm going to hold this matter in abeyance and continue the hearing.

(*Id.* at 31-33).

Despite the Court's admonition, on June 12, 2013, a second petition seeking to revoke Green's supervised release was filed, alleging that Green had provided two urine specimens that were positive for marijuana, and he had subsequently admitted to smoking marijuana on May 18 and May 23, 2013. (ECF No. 47). The petition was amended on July 1, 2013, adding that Green had also admitted to smoking marijuana on June 16, 2013. (ECF No. 57).

On July 8, 2013, Green appeared before the District Court for a revocation hearing on the two petitions and the amendment to the second petition. (ECF No. 68). Green admitted to all of the alleged violations. Accordingly, the Court found by a preponderance of the evidence that Green had violated the terms and conditions of his supervised release.

3

(*Id.* at 5-7). When calculating the sentence range, the Court noted that the range under the Sentencing Guidelines was eight to fourteen months of imprisonment, while the relevant statute allowed up to sixty months of imprisonment. The statute also allowed for the imposition of a new term of supervised release, not to exceed sixty months, minus the term of any imprisonment. (*Id.* at 7). After presenting the calculations to the parties, the Court allowed counsel and the defendant to speak. The Government advised that a Guidelines sentence was acceptable in view of Green's many accomplishments since his release from prison. (*Id.* at 7-8). Defense counsel argued for home confinement, then referral to a halfway house, to allow Green to continue with his college education, employment, and family obligations. (*Id.* at 17-18). Green spoke in mitigation of a lengthy sentence, assuring the Court that he now understood the error of his ways. He asked that his successes not be overshadowed by a couple of regrettable mistakes and stressed that his urine screens since the initial appearance had been clean. (*Id.* at 9-16). After hearing from everyone, the Court imposed a sentence of twenty months of imprisonment followed by thirty-six months of supervised release. (ECF No. 68 at 21).

Green appealed his sentence to the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit"), arguing that the sentence was plainly unreasonable. (ECF Nos. 61, 69 at 2). On April 2, 2014, the Fourth Circuit issued an opinion, affirming the sentence. (ECF No. 69). The Fourth Circuit noted that the District Court had considered all of the relevant factors in determining the proper sentence, and ultimately, the sentence was driven by Green's continued use of marijuana, despite the Court's prior leniency and strong admonition that Green stop using that substance. (*Id.* at 4). The Fourth Circuit added that there was "little doubt as to the reasonableness" of Green's sentence. (*Id.*).

## II. <u>**Motion to Vacate, Set Aside, or Correct Sentence**</u>

On June 4, 2014, Green filed the instant motion under § 2255. (ECF No. 73). Green asserts six grounds in support of his motion. First, he claims that documents that were favorable to him were not presented at the revocation hearing. (*Id.* at 4). Specifically, Green claims that the Probation Officer agreed to offer a recommendation that Green be released from further supervision, but that recommendation was not forthcoming at the hearing. (ECF No. 74 at 4). In addition, at his initial appearance on the petition, the Magistrate Judge ordered that Green submit to random urine screens while on bond awaiting his revocation hearing. The Magistrate Judge advised that the results of the drug screens would be taken into consideration at the revocation hearing. According to Green, he underwent two urine specimens during his period on bond and both were negative, yet those were not presented to the District Judge. Moreover, the transcript from the initial appearance reflecting the Magistrate Judge's statement was not subpoenaed. (*Id.*).

Second, Green contends that the Probation Officer provided erroneous information to the Court in the amendment to the second petition. (ECF Nos. 73 at 5, 74 at 5-6). Green states that on June 18, 2013, he told the Probation Officer that he had last smoked marijuana "a week or so ago," but never provided a definite date. (ECF No. 74 at 5-6). Instead of accurately recording their conversation, the Probation Officer misrepresented in the amendment to the second petition that Green admitted using marijuana on June 16, 2013. Green argues that if he had truly used marijuana on June 16, his June 26, 2013 urine screen would not have been negative. Consequently, by failing to subpoena the negative urine screen, Green was unable to contest the amendment to the second petition. (ECF No. 74 at 6).

Third, Green resurrects his appellate argument that his sentence was excessive.

5

(ECF Nos. 73 at 7, 74 at 7). In support of this ground, Green points to the Government's recommendation for a sentence within the Guidelines range of eight to fourteen months imprisonment. (ECF No. 74 at 7). Furthermore, Green believes that his accomplishments and successes were not given enough weight by the District Judge when determining a proper sentence.

Fourth, Green maintains that extending his supervised release another thirty-six months was excessive and unwarranted. (ECF Nos. 73 at 8, 74 at 11). Green emphasizes that he completed over eighty percent of his original term of supervised release before it was revoked, and he had done well, functioning as a "tax-paying citizen, productive member of society, and [had] never been a threat to the public safety." (ECF No. 74 at 11).

Five, Green alleges ineffective assistance of counsel during the revocation hearing with respect to the amendment to the second petition. (ECF No. 74 at 12-13). Green told his counsel that the Probation Officer was lying about Green admitting to smoking marijuana on June 16, 2013, but counsel made no effort to challenge the amendment by obtaining and submitting the negative urine screen and initial appearance transcript.

Finally, Green argues that his original sentence, including imprisonment and supervised release has now expired. (ECF No. 74 at 16). If he is required to serve his full revocation sentence, he will be incarcerated nine months past his original expiration date and will be bound "to the jurisdiction of the Department of Justice for an additional 36 months." (*Id.*) Green reiterates that he has never been a threat to public safety, has been a productive member of society, and is an asset to his community." Accordingly, he maintains that he should be released from prison and from the imposed term of supervised release. (*Id.*).

## III. Government's Response

The Government focuses its response on the three grounds asserted by Green that pertain to alleged ineffective assistance of counsel.[2] (ECF No. 84). Preliminarily, the Government argues that Green's motion must fail, because he had no constitutional right to effective assistance of counsel at the revocation hearing. According to the Government, a revocation hearing is not a "stage" in a criminal prosecution; therefore, Green was not entitled to counsel under the Sixth Amendment. The Government adds that even if Green had a right to counsel, his motion is meritless because he received effective representation. Relying on an affidavit supplied by defense counsel at the Court's request, the Government contends that Green's counsel made tactical decisions that were clearly reasonable under the circumstances, and Green is hard-pressed to show prejudice.

## IV. Standard of Review and Applicable Law

A motion made pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence that was entered in a separate proceeding. To succeed on such a motion, the movant must prove that the conviction or sentence was imposed in violation of the laws or Constitution of the United States; or the court imposing the sentence lacked jurisdiction; or the sentence exceeded the maximum authorized by law; or the sentence was otherwise subject to collateral attack. 28 U.S.C. § 2255. "A motion collaterally attacking a prisoner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." *Sutton v. United States of America,* No. CRIM.A. 2:02CR65, Civ.A. 2:05CV91, 2006 WL 36859, at *2 (E.D. Va. Jan. 4, 2006). Because a § 2255 motion seeks to deny, evade, or impeach a judgment, claims

---

[2] The Government's brief suggests that it somehow overlooked the other three grounds raised by Green in his motion and memorandum.

7

of error that have previously been raised and rejected on a direct appeal of the judgment may not be raised again in a § 2255 motion. *United States v. Harrison*, No. 96-7579, 1997 WL 499671, at *1 (4th Cir. Aug. 25, 1997) (citing *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976)).

## V. <u>Discussion</u>

Three of Green's arguments attack the reasonableness of his sentence and can be quickly dispatched. Green's appeal of his sentence to the Fourth Circuit was roundly rejected, (ECF No. 69 at 2); therefore, he is prohibited from raising the argument again in a § 2255 motion. *See Jackson v. United States,* 638 F.Supp.2d 514, 571 (W.D.N.C. 2009). In any event, Green has finished serving his sentence of imprisonment; thus, his request for release is moot. *United States v. Satterfield,* 530 F.App'x 229, 230 (4th Cir. 2013) (holding that "because [the defendant] has already served his term of imprisonment, there is no longer a live controversy regarding the length of his confinement. Therefore, his challenge … is moot.") To the extent Green did not explicitly address on appeal his new term of supervised release, that issue arguably is not moot.[3] Nonetheless, for the same reasons that the Fourth Circuit found Green's sentence of imprisonment to be procedurally and substantively reasonable, the length of time Green must spend on supervision is likewise reasonable.

The Fourth Circuit "will affirm a sentence imposed after revocation of supervised release if it is within the governing statutory range and is not plainly unreasonable." *Id.*

---

[3] Issues that should have been, but were not, raised on appeal are procedurally defaulted unless the movant can show cause and actual prejudice resulting from the error about which he complains, or a miscarriage of justice that would flow from the court's refusal to hear the issue. *United States v. Mikalajunas,* 186 F.3d 490, 492-93 (4th Cir. 1999). However, in § 2255 cases, procedural default is generally an affirmative defense that the Government must raise. *Yeatts v. Angelone,* 166 F.3d 255, 260-61 (4th Cir. 1999). Given that the Government did not even acknowledge Green's argument on the reasonableness of his term of supervised release, the undersigned will address the merits of the argument rather than its procedural default.

8

(citing *United States v. Crudup,* 461 F.3d 433, 439-40 (4th Cir. 2006). In Green's appellate decision, the Fourth Circuit further explained:

> [a] revocation sentence is procedurally reasonable if the district court has considered both the policy statements contained in Chapter Seven of the Sentencing Guidelines and the 18 U.S.C. § 3553 (a) (2012) factors identified in 18 U.S.C. § 3583 (e) (2012). ... A sentence is substantively reasonable if the district court states a proper basis for concluding that the defendant should receive the sentence imposed.

(ECF No. 69 at 3). Without hesitation, the Fourth Circuit found Green's revocation sentence of twenty months imprisonment to meet both the procedural and substantive requirements set forth above. The thirty six-month term of supervised release imposed by the District Court resulted from same analysis validated by the Fourth Circuit, fell within the range allowed under § 3583, and was accompanied by a plain explanation of its basis. Consequently, the new term of supervised release is both procedurally and substantively reasonable.

The undersigned notes Green's misguided "fairness" argument, in which he emphasizes that if he is forced to spend twenty months incarcerated and thirty six months on supervised release, he will be in prison nine months longer than his original discharge date and will be under the Government's thumb well beyond the maximum time allotted for his underlying criminal conviction. However, Green fails to appreciate that the extra time he received at the revocation hearing was in punishment for the separate offense of failing to abide by the terms and conditions of his supervised release. (ECF No. 69 at 4). In that sense, the additional penalty cannot be measured against the underlying conviction and sentence. Accordingly, the undersigned **FINDS** that Green's challenges to his revocation sentence are without merit.

Green's remaining arguments, which criticize the effectiveness of his legal

9

representation, are likewise unconvincing. First, as the Government points out, Green had no constitutional right to counsel at his revocation hearing. *United States v. Drew,* 2 F.Supp.2d 781, 783 (E.D. Va. 1998); *see, also, United States v. Kelley,* 446 F.3d 688, 691 (7th Cir. 2006) ("revocation hearings are not 'criminal prosecutions' for purposes of the Sixth Amendment, so the 'full panoply of rights due a defendant in such a proceeding' does not apply") (quoting *Morrissey v. Brewer,* 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)); *United States v. Pelensky,* 129 F.3d 63, 68 n. 8 (2d Cir. 1997) ("Among the fundamental constitutional protections that do not apply in the context of supervised release revocation proceedings [is] the right to counsel.").[4] As Green had no constitutional right to counsel, it follows that he had no constitutional right to *effective* counsel. *United States v. Spangle,* 626 F.3d 488, 494 (9th Cir.2010) *United States v. Broemmel,* 428 F. App'x 832, 837 (10th Cir. 2011). As such, Green cannot state a valid claim constructed on the purported ineffectiveness of his representation.

Even assuming Green had a right to the effective assistance of counsel, his motion still fails because he received representation that plainly fell within the accepted range of reasonable professional services. *See Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In *Strickland*, the Supreme Court adopted a two-prong test for determining whether a criminal defendant received ineffective assistance

---

[4] The United States Supreme Court acknowledges that defendants are entitled to due process in revocation proceedings, which may require the appointment of counsel. *Gagnon v. Scarpelli*, 411 U.S. 778, 790-91, 93 S. Ct. 1756, 1764, 36 L. Ed. 2d 656 (1973). Generally, counsel should be provided for due process purposes when "after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present." *Id.* Moreover, there is a statutory right to counsel found at Fed. R. Crim. P. 32.1. However, neither of these provides the same right to effective assistance of counsel that is guaranteed by the Sixth Amendment.

of counsel. To succeed on such a claim, the defendant must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687-91. "[J]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. Counsel's performance must be assessed with "a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time." *Wiggins v. Smith,* 539 U.S. 510, 523, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). In evaluating whether counsel provided deficient services, "[i]t is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland,* 466 U.S. at 685-86. Therefore, "court[s] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ... [and] that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted). "The question [under *Strickland*] is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington v. Richter,* 562 U.S. 86, 88, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011).

Similarly, in evaluating whether the defendant has shown actual prejudice from any claimed deficient performance, "[p]etitioner must show that 'counsel made errors so serious that counsel was not functioning as the counsel guaranteed ... by the Sixth Amendment.'" *DeCastro v. Branker,* 642 F.3d 442, 450 (4th Cir. 2011) (citing *Harrington,* 131 S.Ct. at 778). It is insufficient for the defendant "to show that the errors

11

had some conceivable effect on the outcome of the proceeding," because "[v]irtually every act or omission of counsel would meet that test." *Strickland,* 466 U.S. at 693. Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. While assistance "which is ineffective in preserving fairness does not meet the constitutional mandate ... defects in assistance that have no probable effect upon the trial's outcome do not establish a constitutional violation." *Mickens v. Taylor,* 535 U.S. 162, 166, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2001) (citing *Strickland,* 466 U.S. at 685-86).

Green quibbles about documents that were not produced at his revocation hearing, which were favorable to his position and that allegedly could have proven the inaccuracy of the amendment to the second petition. What Green fails to accept, explain, or reconcile is the reality that he *admitted*, under oath, that he had committed *all* of the violations set forth in the two petitions and the amendment. (ECF No. 68 at 5). As substantiated in defense counsel's affidavit and the attached letters from Green to counsel, Green's claims of ineffective assistance have no basis in fact. (ECF Nos. 83, 83-1, 83-2). Green and his counsel decided on a strategy when faced with the second petition that, unfortunately for Green, the District Judge did not buy. Nevertheless, the litigation strategy of accepting fault for one's mistakes and throwing oneself on the mercy of the court is universally accepted and often successful. Therefore, Green cannot demonstrate that his counsel's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-91.

Furthermore, contrary to Green's contention that counsel could have done

something more to reduce Green's sentence, the District Judge made it crystal clear, both in March and July, that Green had been given one chance to straighten up, and if he violated the terms and conditions of release a second time, the District Judge did not "really care how serious the violation [was]." (ECF No. 68 at 19). The predominant factor underlying the revocation sentence was not the number of times Green violated the terms and conditions of release, or the dates of his violations; rather, the driving force was that Green violated the terms and conditions at all. Therefore, Green is unable to demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687-91.

In summary, Green admitted guilt to the violation asserted in the amendment to the second petition, rendering the subsequent urine screens irrelevant, except for purposes of mitigation. Green argued the negative screens, and the Government did not contest the accuracy of the argument. Indeed, the Government agreed that a Guidelines sentence would be adequate. However, even after hearing from Green, his counsel, and the Government, the Court imposed a sentence in excess of the Guidelines, which was within his discretion and authority to do. The sentence fell within the statutory range and its basis was fully explained. Accordingly, as Green is unable to establish either prong under *Strickland,* the undersigned **FINDS** that Green's challenges based upon the effective assistance of counsel are unfounded.

## VI. <u>Proposal and Recommendations</u>

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the District Court accept and adopt the findings proposed herein and **RECOMMENDS** that Movant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 be **DENIED** (ECF No. 73); that Green's Letter-Form Motion to be Heard be

**DENIED**, (ECF No. 85); and that this civil action be **DISMISSED, with prejudice,** and removed from the docket of this Court.

Movant is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Movant shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Johnston, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Movant, Respondent, and any counsel of record.

**FILED**: December 23, 2015

Cheryl A. Eifert
United States Magistrate Judge